Sayre, J.
April 16, 1917, plaintiff’s decedent lost her life by the falling of an automobile, in which she was riding, from the county bridge over Lick creek, about five miles above Ironton, near the Ohio river. The negligence complained of was the failure of the county commissioners to erect guard rails along the approach to and at the end of the bridge.
There were no guard rails erected on the approach to the bridge where the accident happened. One witness testified that the car ran off the approach to the bridge, but the overwhelming weight of the evidence was that it ran on the upper chord of the bridge and fell from there about eighteen or twenty feet to the bank of the stream. There was evidence tending to show that state aid was used in the improvement of the road from the floor of the bridge for a distance toward Ironton, and that at the date of the accident it was a state road and under state control, being an inter-county highway and main market road.
The trial court directed a verdict in favor of the defendant at the close of all the evidence.
There were five defenses: first, that the accident was not caused by the lack of guard rails upon the approach to the bridge, as the car ran off the bridge and not off the approach; second, that if guard rails had been erected, or a hedge fence grown as provided in Section 7564, General Code, that would not have prevented the accident, because of the excessive speed of the automobile; third, that as the State Highway Department has control and the duty to r.epair and .maintain the road the defendant, the board of *410 county commissioners, is not liable; fourth, that the driver was intoxicated, with the assent and procurement of plaintiff’s decedent; fifth, defective lights, known to plaintiff’s decedent.
Section 7563, General Code, in part reads as follows:
“The board of county commissioners shall erect or cause to be erected and maintained where hot already done, one or more guard rails on each end of a county bridge, viaduct or culvert more than five feet high. They shall also erect or cause to be erected, where not already done one or more guard rails on each side of every approach to a county bridge, viaduct or culvert if the approach or embankment is more than six feet high.”
Section 7564, General Code, provides:
“It shall be a sufficient compliance with the provisions of the next preceding section, if the county commissioners shall cause to be erected and maintained, a good stock-proof hedge fence where a guard rail is required. Such guard rails or hedge fence shall be erected in a substantial manner, having sufficient strength to serve as a protection to life and property, the expense thereof to be paid out of the county bridge fund.”
Section 7565 makes the county liable for injury resulting from a failure to comply with these provisions.
The defense, that as the car ran off or dropped off the bridge and not off the approach the county is not liable, would be complete if the sole purpose of the guard rail or hedge fence was as a permanent buffer, intended to hold back wagons, carriages or *411 automobiles from going over the embankment when such vehicles come in actual contact with the guard rail or hedge fence. But it seems to us that one of the principal purposes of guard rails is to warn drivers of the exact point of danger so that they may know where to drive to avoid it, just as a light-house warns of the danger near it. The driver in this, case testified that he did not know that he was near the bridge until he was on it, but thought that the curve was only a curve in the road. Now guard rails might have warned him of the nearness of the embankment, and with that knowledge he might -have kept further to the right and avoided the injury. So we hold that the court could not say, as a matter of law, because the car fell from the upper chord of the bridge, that the defendant was not liable. Whether or not the accident was caused by the drunkenness of the driver, assented to and procured by the plaintiff’s decedent, to defective lights of which plaintiff’s decedent had knowledge and notwithstanding continued on the journey, by the speed of the automobile, or by the absence of guard rails, were questions for the jury.
It is contended that since the road has come under the control of the State Highway Department the county commissioners were relieved of their duty to comply with Sections 7563 and 7564. However, these sections have not been expressly repealed, and if they are now superseded by the state highway law it is because they are inconsistent with such law. The following is the last section of the act of June 5, 1915, 106 Ohio Laws, page 666:
*412 “This act shall supersede all acts and parts of acts not herein expressly repealed, which are inconsistent herewith, * *
Section 7464 provides that inter-county highways and main market roads constructed by the state, or taken over by it, shall be maintained by the State Highway Department.
Section 7465 provides that under certain conditions county and township roads may become state roads.
Section 1178 provides:
“There shall be a state highway department for the purpose of * * * affording instruction, assistance and co-operation * * * in the construction, improvement, maintenance and repair of the public roads and bridges of the state * * ■
These sections, and others, show that the legislature intended to create a State Highway Department and give it control over certain highways for the construction, improvement, maintenance and repair of the same. But our attention has not been called to any provision, nor have we found any, which makes it the duty of the State Highway Department to erect guard rails. If by the state highway law the duty to erect guard rails had been placed on the highway department then there would have been an inconsistency between its provisions and the provisions of Sections 7563 and 7564, and the former would supersede the latter. But we can see no inconsistency between a law which confers authority upon the officers of a department to construct, improve, maintain and repair certain roads and a law which directs other officers to erect *413 guard rails on the approaches and ends of bridges. The legislature may have concluded that since it was the duty of the county commissioners to erect guard rails at all other bridges in the county, where required, it might remain their duty to place guard rails, where required, at bridges on roads under state control.
Besides, the legislature may have considered, in enacting the state highway law, that to put the duty of erecting guard rails on the State Highway Department would be virtually eliminating a right of action for injuries where one should exist, and consequently let the duty and liability remain.
The judgment of the court of common pleas will be reversed, and the cause remanded to that court for a new trial.
Judgment reversed, and cause remanded.
Middleton and Walters, JJ., concur.